UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD GINO, as Personal Representative of
the Estate of NANCY A. GINO, Deceased,                    Case No. 09-13261

        Plaintiff,                                        Honorable John Corbett O'Meara

v.

FRASER POLICE SGT. THOMAS BENDER, *et.
al.*,

        Defendants.
_____/

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter came before the court on the following three motions: defendants Phil Rzotkiewicz and City of St. Clair Shores' September 30, 2010 motion for summary judgment; defendants Phil Rzotkiewicz and City of St. Clair Shores' September 30, 2010 second motion for summary judgment; and defendants Thomas Bender, Jack Simon, and City of Fraser's October 4, 2010 amended motion for summary judgment. Responses and reply briefs were filed; and the court heard oral argument on the motions March 3, 2011. For the reasons set forth below, the court will grant Defendants' dispositive motions.

## BACKGROUND FACTS

This litigation arises out of the execution of a search warrant and narcotics arrest. Plaintiff Leonard Gino alleges that on January 22, 2008, police officers in a joint task force from the City of St. Clair Shores and the City of Fraser stormed his house to execute a search warrant. Everyone in the house, Leonard, his wife Nancy, sons Michael and Vincent, and daughter Nicole, were arrested. The complaint, originally filed by Nancy Gino, who has since died, alleged that she was "violently

and unjustly pulled from her chair and forced to the ground," resulting in a "dislocated shoulder and ligament damage," and that Defendants failed to "timely render medical attention."  Plaintiff also alleged that the defendant municipalities failed to "screen, supervise, discipline, counsel or control" their officers and then participated in a "cover-up" or fabrication by providing untruthful accounts of the occurrence.  The amended complaint also alleges that as a result of the injury she sustained, Nancy Gino became despondent, consumed alcohol in large quantities on a daily basis, developed hepatitis and renal failure, and died.

Defendant City of St. Clair Shores and its sergeant Phil Rzotkiewicz filed a motion for summary judgment September 30, 2010, arguing: 1) the plaintiff has failed to identify or establish a constitutional deprivation against the City of St. Clair Shores; 2) the plaintiff has failed to establish a Fourth Amendment excessive force claim against Rzotkiewicz; and 3) the plaintiff was not deprived of medical attention as defined by the Fourteenth Amendment.  In their second motion for summary judgment, the same defendants argue that they are also entitled to summary judgment on Plaintiff's claim for the wrongful death of Nancy Gino.

Defendants City of Fraser and its officers Thomas Bender and Jacques Simon filed a motion to dismiss and for summary judgment, asserting: 1) Simon used a reasonable amount of force under the circumstances; 2) Bender was not personally involved in Nancy Gino's arrest; 3) defendants Simon and Bender were not deliberately indifferent to her medical care; and 4) the City of Fraser does not have a policy, custom or practice which resulted in an alleged violation of her constitutional rights.

## LAW AND ANALYSIS

A municipality may be held liable under 42 U.S.C. § 1983 only when the execution of the government's policy or custom inflicts an injury on an individual.  Monell v. Dep't Soc. Servs., 436 U.S. 658, 691-95.  A municipality cannot be held liable under § 1983 for an injury inflicted by employees, as the doctrine of *respondeat superior* is inapplicable.  Id.  "The complaint must identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy."  Coogan v. City of Wixom, 820 F.2d 170, 176 (6th Cir. 1987), overruled on other grounds by Frantz v. Village of Bradford, 245 F.3d 869 (6th Cir. 2001).

In this case Plaintiff alleges a cause of action based on the City of St. Clair Shores' policy, practice or custom arising out of failure to "properly screen, supervise, discipline, transfer, counsel or otherwise control police officers."  Plaintiff asserts that the City, through its police officers, engaged in a "police code of silence wherein officers and supervisors cover up the use of excessive force by fabricating accounts in an official police report and internal affairs investigation."  Am. Comp. at ¶ ¶ 33 and 34.

However, Plaintiff conducted no discovery in support of a theory of municipal liability. Plaintiff did not depose the city manager, chief of police, or any other supervisory personnel. Plaintiff did not request any records regarding supervision, discipline, screening, or training of St. Clair Shores police officers or defendant Rzotkiewicz.  Plaintiff did not seek copies of the police department's rules, regulations, policies or procedures.  Nor has Plaintiff requested historical arrest records, citizens' complaints, or prior litigation histories.  There simply is no factual basis upon which to support a claim for municipal liability.  The same is true for the City of Fraser.  Therefore, both municipalities are entitled to summary judgment on the § 1983 claims against them.

Claims of excessive force are analyzed under the "objective reasonableness" standard of the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 388 (1989).  Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake.  The proper application "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  The test is objective and to be "judged from the perspective of a reasonable officer on the scene, rather than 20/20 vision of hindsight."  Id.  The court must "make allowances for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain and rapidly evolving–about the amount of force that is necessary in a particular situation."  Id. at 397.  "Not every push or shove, even if it may later seem unreasonable in the peace of a Judge's chambers," violates the Fourth Amendment.  Id. at 396-97.

Narcotics warrants are often executed with sudden and immediate force in order to prevent the destruction of any contraband at the first notice of an officer's presence.  See Hall v. Shipley, 932 F. 2d 1147, 1151 (6th Cir. 1991).  In this case, the officers were engaged in the execution of a such  search warrant.  They had the authority to enter with weapons drawn, to order the occupants of the house to the ground, and to secure with handcuffs everyone inside the residence.  Defendant Rzotkiewicz entered the living room and found Officer Simon kneeling next to Nancy Gino.  She was already on the ground, and Officer Simon had a single handcuff affixed to her right wrist and was attempting to gain control of Nancy Gino.  Rzotkiewicz bent down and held her left arm in

place while Officer Simon completed the handcuffing process. The two then rolled Nancy Gino onto her side and lifted her to her feet. There is no evidence to refute the officers' accounts of the handcuffing, as no other persons were in the living room when she was handcuffed. Furthermore, there can be no claim of injury as a result of Rzotkiewicz's actions because Nancy Gino suffered injury only to her right arm and shoulder, not her left. See Def's Ex. L.

Officer Simon has testified that he ordered Nancy Gino to the floor "three or four times," and she refused to follow the order, making it necessary for him to employ a "straight arm bar technique" to take her to the ground. In any event, there is no evidence to show that defendant Rzotkiewicz used excessive force in effecting her arrest despite Plaintiff's pictures of Nancy Gino's bruised shoulder.

In assessing the liability of individual police officers, "[e]ach defendant's responsibility must be assessed individually based on his own actions," and he is responsible only for his own constitutional torts, not those of others. Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010). Where excessive force is alleged, a plaintiff must identify the officer or officers involved and establish that each officer engaged in conduct that violates the Constitution. In rare circumstances, an officer may be held liable for his "failure to prevent the continuation of a constitutional deprivation." Durham v. Nu'man, 97 F.3d 862, 866-68 (6th Cir. 1996).

In this case defendant Rzotkiewicz was the fifth officer to enter the house. The entry team preceded him into the house, and there was a delay between the time the initial four members of the raid team entered and the time Rzotkiewicz entered. By the time he got to Nancy Gino, she had one hand handcuffed by Officer Simon. There is no evidence that Nancy Gino was subjected to a prolonged use of force to show that Rzotkiewicz witnessed an excessive use of force and that he

could have intervened but failed to prevent it from continuing.  Therefore, he is entitled to summary judgment on this claim as well.

In addition, Officer Simon's job as a member of the entry team was to immediately secure the occupants of the residence and clear the place of dangers prior to the execution of the warrant and search of the premises.  That process involves announcing police presence and ordering the occupants to the ground.  Those who do not comply are taken to the ground swiftly and secured in handcuffs.  Narcotics raids are conducted by surprise and a show of force.  The exigency of the process is employed for the safety and protection of the occupants as well as the officers involved.

It is Officer Simon's testimony that he ordered Nancy Gino to get on the ground three or four times, and each time she refused.  He further testified that when he attempted to guide her by the arm, she pulled her arm away and took a combative posture.  He then used an arm bar to take her out of her chair and take her to the ground.  Again, since he was the only other person in the room, his testimony is not disputed.  Plaintiff offers his own hearsay testimony that his wife told him while the two were riding in the back of the police car that she had been "hurt" by the takedown.  However, there is no evidence to support a finding that the force deployed under the circumstances was excessive, unreasonable or contrary to the Fourth Amendment.

The amended complaint also alleges that Defendants failed to provide medical attention to Nancy Gino.  To prove such a claim under the Fourteenth Amendment, a plaintiff must show "deliberate indifference" to a "serious medical need."  Phillips v. Roane County, 534 F.3d 531, 539 (6th Cir. 2008).  The standard requires something more than mere negligence.

In the present case, Nancy Gino remained at the residence only a short time after she was seized.  She was almost immediately transported to the St. Clair Shores Police Department, where

she was placed in a room with her daughter Nicole. Nicole has testified that she realized her mother was intoxicated and was complaining of an injury to her right shoulder. Within 20 minutes, EMS arrived and transported her to the hospital for medical attention. There is no medical evidence that the 20 minute delay caused injury or exacerbated her medical condition. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim for failure to provide medical attention.

Defendants City of St. Clair Shores and Rzotkiewicz's second motion for summary judgment argues that Plaintiff cannot establish any causal connection between the defendants' conduct and the alcoholism that allegedly led to Nancy Gino's death 18 months after the raid. Her death certificate describes the cause of death as pneumonia due to or as a consequence of "ETOH (alcohol) Hepatitis." Defs' Ex. 7. The medical records of Beaumont Hospital-Grosse Pointe reflect that she died of acute alcoholic hepatitis as a primary diagnosis.

Although Plaintiff alleges that Nancy Gino's drinking escalated after the raid, there is evidence to show that she was a heavy drinker as early as 2006. Her daughter Nicole testified that she tried to talk to her mother about her drinking in 2006. Son Vincent corroborated his sister's testimony, testifying that his mother was drinking excessively in 2007. Nancy Gino's own statement to Dr. Zahra Moattari, a consulting physician who saw her on June 7, 2009, was that she drank every day and that she had been drinking for three years, dating back to 2006, well before the events of January 22, 2008.

There is no evidence that her physical injuries from the raid caused her excessive drinking. Nancy Gino had numerous sessions with counselors in which she mentioned her and her family's legal issues and the financial problems arising from those legal issues. She also discussed missing her husband and sons while they served their prison sentences. However, to suggest that she began

to drink excessively because of her physical injuries is mere speculation.  To establish proximate cause, a plaintiff must establish a causal connection that is logical and not conjectural.  Without a causal connection, Defendants are entitled to summary judgment on Plaintiff's wrongful death claim.

The Fraser defendants have moved to dismiss or for summary judgment.  It appears as though Officer Bender was not involved in Nancy Gino's arrest.  He entered the house right before Officer Simon, and Bender's assignment was to clear the house starting with the basement.  After securing the basement, he returned to the living room where all occupants of the house were secured and accounted for.  The excessive force claim against Bender should be dismissed because he was not personally involved in the arrest of Nancy Gino.

Defendants Bender and Simon are also entitled to summary judgment on Plaintiff's claims of deliberate indifference to medical needs for the reasons stated above.

Finally, even if the defendant officers were not entitled to summary judgment, they are entitled to qualified immunity under the circumstances presented here.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Courts are required to consider whether "[t]aken in a light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If so, the court must consider "whether the right was clearly established . . . in light of the specific context of the case."  Id.  "Once a qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."  Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).  In this case there is no evidence to show that

Officer Simon, or any other defendant officer here, violated Nancy Gino's constitutional rights by using excessive force in the execution of a valid search warrant at this house.

### ORDER

It is hereby **ORDERED** that defendants Phil Rzotkiewicz and St. Clair Shores' September 30, 2010 motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendants Phil Rzotkiewicz and St. Claire Shores' September 30, 2010 second motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendants Thomas Bender, Jack Simon, and City of Fraser's October 4, 2010 motion for summary judgment is **GRANTED.**


s/John Corbett O'Meara
United States District Judge


Date:  May 11, 2011




I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 11, 2011, using the ECF system.


s/William Barkholz
Case Manager


9